Eastern Dist.<br>
*April,* 1836.<br>
——<br>
MACARTY<br>
*vs.*<br>
BOND'S ADM'R.

---

## MACARTY *vs.* BOND'S ADMINISTRATOR.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF ASCENSION.

9L 351<br>
49 921<br>
49 1137<br>
9 351<br>
114 211

A mortgage which is not recorded in the parish where the property is situated, until after the death of the mortgagor, cannot have effect against his other creditors who are such at his death.

An administrator is without capacity to purchase property at the sale of a succession administered by himself; and it is equally clear he cannot do so by means of an agent or person interposed for that purpose.

An opposing creditor may attack a sale of property of an estate, as being illegally made to the administrator, without alleging fraud and injury to himself, when the evidence shows that in fact no contract of sale exists for want of parties capable of contracting.

The general rule is that written titles form full and conclusive proof between the parties. But where a third person alleges nullity of a sale for some cause, parole evidence is admissible under such allegation.

It is no objection to the competency of a witness that he may be exposed in the course of his examination, to have questions propounded to him, the answers to which might subject him to a criminal prosecution. It is his privilege to decline answering them.

This case comes up on an opposition to the tableau of distribution, made out and filed by Narcisse Landry, administrator of the estate of Francis A. Bond, deceased.

L. B. Macarty the opposing creditor, made opposition to the sale of a tract of land and slaves, which was adjudicated to H. Treille at the second sale, for one thousand eight hundred dollars, and put down on the tableau as having been sold for that sum. The opponent alleges, it was adjudicated nominally to Trielle, but in fact for the benefit of the administrator, which renders the sale illegal, the latter having no authority to purchase at the sale of an estate administered by him, either directly or indirectly. He prays that the sale be declared null, and the property decreed still to belong to the succession of Bond, and that the administrator pay one thousand dollars in damages. Treille was called and examined as a witness by the administrator, and his testimony excepted to. He had a conversation with the administrator before the sale, who told him the land and this slave had been offered several times, and no sale effected; that he could not purchase himself, although one of the largest creditors; he told witness to purchase it, and he did so with the intention of selling to the administrator. He never gave his notes, &c.

The opponent further alleges that he is a mortgaged and privileged creditor of the estate administered by Landry, for the sum of five thousand five hundred dollars, due the 9th of April, 1834; secured by a mortgage on the estate of the deceased, in the parish of Ascension, and a pledge of sixty shares of Union Bank stock attached thereto, by public act passed before Octave De Armas, in the city of New-Orleans, the 6th of April, 1833. This mortgage was not recorded in

the parish of Ascension until after the death of the mortgagor. The judge of probates decided that the first ground of opposition could not be sustained, because the mortgage of the opponent was not recorded until four months after the succession of Bond, the mortgagor, was opened. *Louisiana Code, article* 3327.

That the second branch of the opposition could not be sustained, because H. Treille, the vendee or person to whom the land and slaves was adjudicated, was not before the court a sa party. *M'Combs* vs. *Dunbar et al. 3 Louisiana Reports,* 517. Macarty, the opponent, appealed.

*Morphy,* for the appellant.

*A.* and *J. Seghers,* for the administrator and appellee.

1. The opposing creditor and appellant cannot attack the legality of the sales made in this case, under pretence of said sales being made to the administrator of the estate, when on the face of the papers they appear to have been made to H. Treille, unless he first shows that said sales were made in fraud of his rights as creditor, and that he has suffered damages as a consequence of said alleged illegality. *Louisiana Code, articles* 1964, 1965 and 1973.

2. He has no right of ownership to the property sold, only a general *jus in re,* the kind of pledge on that property as well as on all the other property of the estate of F. A. Bond; which he has in common with all the other creditors of the estate, according to the *Louisiana Code, article* 3150.

3. No damages have been proved to have resulted from the sales attacked as illegal. The property could not at the time of sale have brought a higher price, than the price for which the same was sold, and which is carried to the credit of the estate.

4. The sales made to H. Treille, cannot be declared null and set aside in this case, the vendee not being a party to the suit. The opposition necessarily resolves itself into a claim for damages, and none are proved. *3 Louisiana Reports,* 517, 521, 522.

45

5. The mortgage in favor of L. B. Macarty, not having been recorded until after the succession of F. A. Bond was opened, has no effect against the other creditors of the estate, said estate having been accepted under the benefit of inventory, and being insolvent. *Louisiana Code, article* 3327.

*Bullard, J.,* delivered the opinion of the court.

In this case the appellee, acting as administrator of the succession of F. A. Bond, deceased, filed a tableau of distribution, to which Macarty, a creditor, made opposition on two grounds: 1st. That the claim of the opponent against the estate, was set down as a simple, and not as an hypothecary debt; and 2d. That Landry, the administrator, was himself the purchaser of the land; and the slave Charlotte and her child, nominally adjudicated to Hubert Treille. That the sale of said land and slaves is null, and they still form a part of the estate of Bond, and are subject to be administered as such.

A mortgage which is not recorded in the parish where property is situated, until after the death of the mortgagor, cannot have effect against his other creditors, who are such at his death.

With respect to the first ground of opposition, we are of opinion the court below did not err in overruling it. Macarty's mortgage was not recorded in the parish where the property is situated, until after the death of Bond, and according to article 3327 of the Louisiana Code, it can have no effect as a mortgage against the other creditors of the deceased.

An administrator is without capacity to purchase property at the sale of a succession administered by himself, and it is equally clear he cannot do so by means of an agent, or person interposed for that purpose.

In relation to the pretended sale of the plantation and slaves, the price of which forms the first item in the tableau, the evidence in the record shows, that H. Treille, to whom the property was adjudicated at the public sale, was acting for Landry, the administrator; that he was nothing more than a person interposed, for the purpose of divesting the estate of the title for the benefit of Landry. It is admitted, that the administrator is without capacity to purchase at the sale of the estate, administered by himself; and if he cannot validly purchase for himself, it appears to us equally clear, that he cannot do so by means of an agent or person interposed for that purpose. With this evidence before us, we are bound to say, that in our opinion, the estate of Bond has

MACARTY
*vs,*
BOND'S ADM'R.

not been legally divested of title. The evidence of this fact comes from the nominal purchaser himself, who does not pretend to have acquired any title ; who disclaims on oath, any pretension to the property, and against whom it would, therefore, be nugatory to misstate any proceedings.

But it is contended, that the opposing creditor cannot attack the legality of the sales, in this case, under pretext that the same were made to the administrator, when on the face of the papers they appear to have been made to H. Treille, unless he first shows said sales were made in fraud of his rights as creditor, and that he suffered damages in consequence of such alleged illegality; and he relies on articles 1964, 1965 and 1973, of the Civil Code. We cannot assent to this proposition. The question here, is not whether a sale ought to be avoided as fraudulent, but whether a contract of sale is shown to exist. Without parties capable of contracting, there can be no contract; without a vendee capable of purchasing, there is no sale. We are of opinion there has been no sale of the property, because the administrator is incapable of purchasing, either directly or by interposition of a third person.

*An opposing creditor may attack a sale of property of an estate, as being illegally made to the administrator, without alleging fraud and injury to himself, when the evidence shows that in fact no contract of sale exists, for want of parties capable of contracting.*

If the question before the court were, whether a party in possession, under the purchase, could be condemned to surrender the property without being made a party to the suit, there would be much force in the further argument of the appellee, in support of which he relies on the case of Dunbar *vs.* M'Combs. *3 Louisiana Reports,* 517. But that case was very different from this. In that case, suit was brought to annul certain proceedings and alienations alleged to have been conducted under a void authority, and the purchasers of the property were not made parties. In the present case, if there was any purchaser, it was the administrator of the estate, and Treille, who was the nominal vendee, is produced as a witness, and disclaims. But the testimony of Treille was objected to, on the ground that parole evidence cannot be introduced to contradict a written act of transfer of immoveable property ; and also, that the witness was incompetent to testify, as he might criminate himself. A bill of

EASTERN DIST.
*April,* 1836.

The general rule is, that written titles form full and conclusive proof between the parties; but where a third person alleges nullity of a sale for some cause, parole evidence is admissible under such allegation.

It is no objection to the competency of a witness, that he may be exposed in the course of his examination, to have questions propounded to him, the answers to which might subject him to a criminal prosecution. It is his privilege to decline answering them.

exceptions was taken, upon which the appellee relies in this court. We think the court did not err, in admitting the evidence. The general rule is, that written titles form full and conclusive proof, between the parties; but in this case, a third person alleges nullity, and we think parole evidence admissible, under such an allegation. The witness when sworn, was certainly not bound to answer any question which might subject him to a criminal prosecution, but it is no objection to the competency of a witness, that he may be exposed in the course of his examination, to have questions propounded to him, the answer to which might criminate him. It is his privilege when such questions are propounded, to decline answering, and to claim the protection of the court.

With this view of the case, we are of opinion that the opposition ought to have been sustained, as to the first item of the tableau; and the land still considered as belonging to the estate, and subject to be administered, according to law, for the benefit of the creditors.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Court of Probates be reversed, that the opposition to the first item in the tableau, on the ground that the land and slaves are still the property of the estate, be sustained, and that the case be remanded for further proceedings according to law, the appellee paying the costs of this appeal.