## Ross *v.* Ross et al.

3　533
47　1060

The incapacities created by arts. 1139, 1784, of the Civil Code, endure as long as the relations between the parties from which they result, but no longer. If the contract by which a curator, administrator, &c. acquires the property previously committed to his charge necessarily terminates the previously existing relation between him and his vendor, it may be voidable on other grounds, but it does not come within the prohibition of arts. 1139, 1784. Thus the sale by an heir to the executor of his hereditary rights, necessarily implies a deliberate intention that the relation should cease, so far as his rights are concerned.

Inadequacy of price is either lesion or evidence of fraud. If lesion, the action to annul is barred by four years. If taken as evidence of fraud, the action is limited to ten years from the discovery of the fraud; and, in the absence of other evidence, the period of prescrip, tion must commence from the date of the sale.

The nullity established by art. 1784 of the Civil Code is relative only, and introduced exclusively in the interest of the owners of the property, of which that article forbids the sale·

One who has the right to attack an onerous contract which the law declares null for his private benefit, makes it valid and obligatory on him by his ratification, express or implied, or, in default of ratification, by his voluntary execution subsequeatly to the period at which the allegation could have been validly confirmed or ratified. This rule admits of no exception Every nullity which may be thus ratified is prescribed by ten years under art. 2218 of the Civil Code. The only class of nullities to which this prescription is inap, plicable, are those resting on motives of public order or utility, or taking their source in the respect due to morals; and, even in such cases, if this contract ceases to be illicit, it is from that time susceptible of ratification, and the prescription of ten years applies to it.

APPEAL from the Second District Court of New Orleans, *Canon*, J. The facts of this case are stated in the opinion of the court.

*T. H. Lewis*, for the plaintiff. 1. The sales in 1835 and 1839, were made by persons of full age, fairly, with full knowledge of all the facts, and for the purpose of realizing, by the vendors, their shares of property held in common with their brothers; and amount, as to them, to a partition of their interests and shares in the property of the estate of *William Ross*, deceased, which partition they had a perfect right to make in any manner they chose to adopt. C. C. arts. 1245. 2420, 2424. 2. In the sale of *Robert Ross'* share, there is no ground for a plea of *lesion*; and in that of *John Ross*, if lesion ever existed, the right to complain of it is prescribed by four, five, and ten years. C. C, 1870, 3507, 3442. 3. If the fact of *James Ross* having been executor of the deceased, ever formed a ground for setting aside these sales, the right to set up that cause of nullity is prescribed by two years, by the act of 20th March, 1840. Session Acts, p. 123, § 1, 2, 3, 4. See also Acts of 1814, p. 30, § 1, 2. 4. A sale made by one heir to his co-heir of· his share in a succession, is not subject to rescision on account of lesion, unless fraud be alleged and proved, which is not done here. C. C. 1442, 1443, 1444. 5. Defendant's counsel relies on the case of *Michoud et al.* v. *Girod et al.*, 4 Howard, 503. I distinguish that case from this, in several particulars. 1st. That decision is merely based on the ground that there was *actual fraud and concealment* practised by the executor on his co-heirs, who reside in Europe and he in this country. In our case there is no pretence of actual fraud or concealment; and all the parties lived together and knew all the facts equally well. 2d. The prescription provided by the act of 1840, was not pleaded, nor decided upon by the court, in that case. 3d. That case was decided upon the principles of limitation, acted on by courts of Chancery in England, and in those States of the Union where the common law prevails; and those principles, being very different from our prescription laws, our courts, in cases over which the United States Supreme Court has no jurisdiction, are not, and ought not to be, bound by them; but should decide upon our own laws. 4th. In that case the executor was, in fact, though not in form, both vendor and vendee—our case is very different.

Ross
*v.*
Ross.

*Bonford*, for the appellants. Articles 1139, 1784 of the Civil Code formally prohibit a person administering a succession, from purchasing any portion of the estate committed to his charge. The parties, it is answered, were of full age; they were legally capable of contracting with each other; as heirs they might have taken the estate out of the court of Probates, or have partitioned it extrajudicially; and, being *competent to do this*, each of the heirs was competent to sell to his co-heir. The incapacity of an administrator under article 1784, results from the subject matter of his contract; not, as the above position assumes, from the persons of the contracting parties. As to all other matters, the parties may be perfectly competent to contract with each other to any extent, the incapacity being determined not from any ability or disability of the parties, but entirely and exclusively from the consideration of the thing or property which is the object of their contract.

Not less unsound is the idea that, as the estate might have been taken out of the Probate Court, therefore the sale is valid. Had the relation of the executor to the estate been closed by a final settlement of his accounts, and the succession delivered over to the heirs, it is true they, or any of them, might have sold their property to him, as well as to any other person. But this relation of the plaintiff to the estate was existing at the time of the sale as it exists now, and so long as that relation subsisted, so long did and does the incapacity to purchase continue.

The roman law contains the prohibition on all persons in an administrative or fiduciary situation, to make acquisition of the property which is the subject of their trust. Tutor rem pupilli emere non potest. Idemque porrigendum est ad similia; id est, curatores, procuratores et qui aliena negotia gerunt. Pandects of Pothier, l. 18, xxii. The commentators make the reason of the rule to consist in this, that it is not expedient to expose one in a fiduciary position, to the temptation even of abusing his trust. The english and american courts of Equity have adopted, in its full extent, the rule of the roman law, and we have it laid down by them in its most general and laconic form, that "a trustee can never be a purchaser." In *Davoue* v. *Fanning*, 2 Johns. Ch. Rep. 225, Chancellor Kent went into an elaborate investigation of the rule and of all the authorities in which it was applied. His masterly reasoning places beyond question the soundness of the policy of maintaining the restriction with the greatest rigor. The french law contains a similar provision, applicable, according to Boilleux, to public as well as to private sales. C. N. 1596. Boilleux, Commentaires, vol. 3, p. 210. In this State, before the Civil Code, the same rule existed as derived from the spanish law. It was the subject of discussion in the case of *Harrod et al.* v. *Norris' heirs*, 11 M. R. 297. Judge Porter, in delivering the opinion of the court, remarks: "The reason for introducing this principle into our jurisprudence is obvious, and its reasons manifest. It was to prevent men from being led into temptation; that they might not be placed in a position where their private interests and their duties to others were at variance; the law presuming that in such case the latter would be sacrificed. But the whole doctrine upon this subject underwent a careful examination before the Supreme Court of the United States, in a case that came before them from this State, *Michoud* v, *Girod*, 4 How. 503, and there the rule was affirmed as prevailing in this State, that in no case can an executor acquire by purchase the interest of the heir. Such a purchase *is* an absolute nullity; not voidable only, but void.

An effort has been made to limit the application of the rule to public sales provoked by an executor or curator. In the face of the mass of authorities to the contrary, such a proposition will hardly be renewed. The reverse is nearer the truth: for in those cases where the rule has been relaxed, it has been done on the ground that the purchase was at public sale. And this the roman law permitted, as may be seen by referring to Pothier's Pandectes, vol. 6, p. 540. Private purchasers are more particularly within the evil avoided by the prohibition, and to guard against them was the prohibition more evidently framed. The defendant has averred that the act of sale was in fraud of his rights. Such an averment, however, was not necessary for his case. It is the incapacity of the executor to purchase, and not the injury done to the defendant, which renders the sale void. In the language of Judge Porter, in the case cited above, from 11 Martin, the purchase may have been advantageous to the seller, yet as it is in contravention to a prohibitory law, it is void. In *Munroe* v. *Allair*, 2 Caines' Cases in Error, 183, the question arose on demurrer to the bill, and the demurrer was sustained.

It was attempted in the court below to bring this case within the provisions of the act of 1840, allowing executors, curators and others, in certain cases, to become purchasers at the sale of the succession property, and confirming previous purchases, unless suits were instituted within two years from the passage of the act. That act, in its preamble, does not purport to repeal, but simply to construe, articles 1139, 1784. The plaintiff's interpretation would repeal them, if the act allows the persons therein mentioned to purchase at the sale of the succession property. What sale is meant here? Clearly none other than the public sale which takes place in the regular administration of the succession; and this is more apparent from the extension which this act has received by the act of 1841, applying it to tutors. It will hardly be urged that the private purchase by the tutor, of the interest of his ward, is allowed under the act of 1840; and yet that act extended the same rights to tutors as are enjoyed by executors and others under the act of 1840. The evident intention of the legislature was, to relax the rule only so far as to permit the executors and others in certain cases to bid on the property and become the purchaser, at public sale, thereby giving them the same privilege as existed in the roman law, but surely not intending, in opposition to the experience and policy of every civilized country, to open the door to the many evils which an abrogation of the prohibition of articles 1139 and 1784 would inevitably produce.

The judgment of the court was pronounced by

Rost, J. The plaintiff, being the testamentary executor of his father, *William Ross*, represents that the testator left at his death five children, *George*, *John*, *Robert*, *Ann*, and himself, each of whom inherited one-fifth of his succession; that *Ann* subsequently died intestate and without issue, leaving her brothers her heirs, each for one undivided fourth. He further alleges that he purchased the share of *John Ross*, on the 20th of June, 1835, and that the share of *Robert Ross*, now deceased, was purchased by him and *George*, he, the plaintiff, having paid $1,400, and *George* $600, of the purchase money. He avers that, in consequence of his purchase, *John's* share in the succession is limited to the fourth of the share of *Ann*, and claims that the remainder be divided in the proportion of five-eighths to himself and three-eighths to *George*. To this petition praying for a partition of the succession, *John Ross* answered, that the pretended sale under which the plaintiff claims his share in the succession was a complete and absolute nullity; that the plaintiff was legally incapable of acquiring by purchase the defendants' interest in the succession; that the sale was made in fraud of his rights, and that the price was inadequate and disproportioned to the value of the thing sold. He further averred that, by reason of his incapacity to purchase, he has no title to the share of *Robert*. *George Ross*, the other defendant, filed a general denial, admitted the heirship, and joined in the prayer for a partition. The court below rendered judgment according to the prayer of the petition, and the defendants appealed.

In the case of *Michoud et al.* v. *Girod et al.*, on which the defendants mainly rely, the Supreme Court of the United States remarked: " We scarcely need add that a purchase by a trustee of his *cestui que trust, sui juris*, provided it is deliberately agreed or understood between them that the relation shall be considered as dissolved, *and there is a clear contract, ascertained to be such after a jealous and scrupulous examination of all the circumstances; and it is clear that the cestui que trust intended that the trustee should buy, and there is no fraud, no concealment, and no advantage taken by the trustee of information acquired by him as trustee, will be sustained in a court of equity.*" 4 Howard, 556. This rule of equity jurisprudence harmonizes with the dispositions of our Code. The incapacity created by arts. 1139, 1784, endures as long as the relation of *trustee and cestui que trust*, and no longer. If the contract by which the trustee acquires the property previously committed to his charge, necessarily terminates

Ross
*v.*
Ross.

that relation, it may be voidable on other grounds, but it does not come within the prohibition.

The sale by two of the heirs, in this case, of their hereditary rights, necessarily implies the deliberate intention on the part of the vendors that the relation of trustee and *cestui que trust* should cease, so far as their shares went. There is a clear contract made by persons capable of contracting, and who intended that the trustee should buy.

Fraud and concealment are alleged, but no evidence whatever has been adduced in support of the allegation. It is contended that, in the sale of *John Ross*, concealment and fraud are proved by the inadequacy of the price. The evidence of this fact is very loose and unsatisfactory. But if it was the reverse, the plaintiff has pleaded the prescriptions of four and ten years ; and we are of opinion that one of the two pleas must avail him. Civil Code, arts. 1870, 2218.

Inadequacy of price is either lesion or evidence of fraud. If it is lesion, the action is barred by four years. If taken as evidence of fraud, the action is limited to ten years from the discovery of the fraud, which, in a case like this, must, for want of better evidence, be taken to be the date of the sale. The prohibition found in art. 1784 of the Civil Code, on which the defendants rely, is analogous to that found in art. 1596 of the Code Napoléon. The nullity which this last article establishes is held by french commentators and courts of justice to be merely relative, and introduced exclusively in the interest of the owners of the property of which that article forbids the sale. Rogron, Code Civil, on art. 1596. 3 Delvincourt, p. 66, 126, *notes.*

It is a rule that admits of no exception that, every man who has the right to attack an onerous contract which the law declares null for his private benefit, makes it valid and obligatory upon him by his ratification, express or implied, or, in default of ratification, by his voluntary execution of it subsequently to the period at which the obligation could have been validly confirmed or ratified. The sale made, without the formalities of law, by the tutor, of the immovables belonging to his ward, is considered in law as an absolute nullity ; and yet the minor may ratify it, expressly or tacitly. L. 10, ff. *De Rebus Eorum.* Toullier, vol. 7, nos. 594, 595, 596 ; vol. 8, nos. 517, 518. Every nullity which may thus be ratified, is held by the french courts to be prescribed by ten years, under art. 1304 of the Napoléon Code, which is word for word the same as art. 2218 of our Code. This has been the jurisprudence of France ever since the ordinance of Louis XII, passed in 1510, for the purpose, as is therein stated, *que les domaines et propriétés des choses ne soient incertaines et sans sûreté, ès mains des possesseurs d'icelles, si longuement qu'ils l'ont été ci-devant.* Francis I, in an ordinance passed in 1535, re-enacted this disposition, and gave the same reasons for its necessity. The Code Napoléon, says Toullier, has sanctioned the disposition of this ancient legislation ; it does not distinguish whether the nullity is absolute or relative, or the causes in which it originates, but fixes in all cases the duration of the actions of nullity and rescission to ten years, in order to insure the stability of transactions and the peace of families. 7 Toullier, no. 599.

The only class of nullities to which this prescription is considered in France as inapplicable, are those resting on motives of public order or utility, or taking their source in the respect due to morals ; and, even in those cases, if the contract ceases to be illicit, it is from that time susceptible of ratification, and the prescription of ten years is applicable to it. We must presume that our

law-givers in adopting this disposition of the law of France, intended that it should receive here the application it has received there during the last three centuries. It has been thus uniformly understood heretofore, and nothing would authorize us to change in that respect the jurisprudence of the State.

The defendants have generally denied the allegations of the plaintiff, and the correctness of his account. The sale from *Robert* to him and *George*, states them to have been *joint and equal purchasers*. But the account presented distributes this share as if $1,400 of the price had been paid by the plaintiff, and $600 only by *George*. There is no evidence in the record to justify that distribution.

---

## Same Case—On an Application for a Re-hearing.

*Bonford*, for a re-hearing. The judgment of the court in this case, so far as it concerns the rights of *John Ross*, is based upon the prescription of ten years, pleaded, for the first time, by the plaintiff in this court. Petitioner submits that the Supreme Court is incompetent to pass, in the first instance, on any issuable plea. The constitution limiting its jurisdiction exclusively to cases and questions presented by way of appeal from an inferior tribunal. Whether or not a right or obligation is extinguished by prescription is a mixed question of law and fact, to be tried and determined upon pleadings and issues properly made up between the parties. If this issue be for the first time tendered to the opposite party, when the case is in the Supreme Court, no other action can be had than to remand the case for farther action to the inferior court.

It is assumed by your petitioner that, without the intervention of the plea of prescription, he would have been entitled to have had the sales to the plaintiff annulled.

The court lays much stress upon that portion of the opinion of the United States Supreme Court, in the case of *Michoud* v. *Girod*, in which it is intimated that a case might possibly present itself, in which a sale, by a *cestui que trust* to his trustee, might be sustained by a court of Equity. Although the court there puts the case as an extreme one, it is still difficult to reconcile this portion of their opinion with the absolute and unqualified declaration of the incapacity of trustees to purchase, as set forth in other portions of that document. It is to be observed that the cases quoted in support of the modification of the rule, are all english cases, which were carefully and elaborately reviewed by Chancellor Kent in the case of *Davoue* v. *Fanning*, 2 John. Chan. Rep. 254, who did not hesitate to express his disapproval of them, and to insist on the absolute and unqualified character of the incapacity. But a very wide distinction is to be observed between the present case and that of *Michoud* v. *Girod*, in so far as the reasoning of the Supreme Court, just referred to, can be held applicable. It must not be forgotten that in the *Girod* case, the court was sitting as a court of Equity ; that it was administering relief according to the rules of equity proceedings, and according to the maxims and principles prevalent in courts of Equity. They were considering the extent of the general maxim, created by the english Equity courts, that a trustee can never become a purchaser. They were not, in that branch of their opinion, quoted by the court in the present case, passing upon the effect to be given to an absolute, stringent statutory provision. Neither at common law, nor by statute in England, did the incapacity in question exist. It was created by the court of Equity, and the Supreme Court of the United States, in examining the doctrine of the cases upon this subject, took occasion to quote, with approval, the modification which the english courts had thought proper to make. Equity courts administer relief according to the circumstances of the particular case : and although, where the law determines the right of the parties, they are bound equally with courts of law to follow and observe the law, yet where they are applying principles and maxims which have been created by their own tribunals, they will never consider these

of so unbending a character, but that they shall be made to yield to the peculiar circumstances of a case not within the mischiefs designed to be guarded against by the rule. The third chapter of Story's work on Equity Jurisprudence, contains numerous instances.

But in the present case no such discretion can be assumed. The incapacity, if it exist at all, is of positive legislative enactment. The law has made no exception, and the courts can create none. On this subject the 19th article of the Civil Code may be invoked : "When, to prevent fraud or from any other motive of public good, the law declares certain acts void, its provisions are not to be dispensed with on the ground that the particular act in question has been proved not to be fraudulent, or not to be contrary to the public good." If the law has declared that an executor shall not purchase any portion of the estate committed to his charge, it is not in the power of the tribunals to declare, in any given case, that such a purchase is valid, because not within the mischief which occasioned the rule.

The grounds of public policy on which this incapacity is created, are apparent. When article 1596 of the Napoléon Code was presented for examination, we find reasons of public policy most prominently brought forward to justify its adoption. Thus : "Les raisons de sûreté et d'honnêteté publiques qui motivent ces défenses sont trop evidentes pour qu'il soit nécessaire de les developper." Poncelet, Motifs du Code Civil, tome 1, p. 592. And Mr. Portalis : "Il convient d'ecarter d'eux jusqu'au soupçon qu'ils ont abusé de leur autorité ou de leur ministère." Locré, Code Civil, à l'article 1596, p. 134. Troplong, in deciding that the offending party cannot avail himself of the article in question, says : "Les incapablés dont il vient d'être question, ne serait pas fondés a s'en prévaloir eux-mêmes. Leur propre délit ne saurait être une raison de les affranchir de leurs obligations." Duranton is to the same effect.

The court rely principally upon Toullier, vol. 7, no. 599, and upon Rogron, in coming to the conclusion that the nullity is cured by the prescription of ten years. Toullier's views upon the subject of nullities, and of the prescription by which they are affected, seem to be peculiar. It is certain that they are not assented to by the more modern commentators. Troplong makes an able reply to the doctrine of the articles of Toullier, quoted by the court, in which he is sustained by the opinion of Duranton. See Troplong, Vente, no. 249. Duranton, vol. 12, nos. 523, 524. Rogron, as cited by the court, simply decides that the nullities mentioned in articles 1596 and 1597, are relative with respect to the persons who can take advantage of them. But, as conclusive evidence that the question of prescription is not affected by this, we find Troplong giving as an instance in which prescription is not pleadable, the case of an attorney purchasing a litigious right. Troplong, Prescription, no. 905. The case being one of those prohibited by art. 1597, and the nullity, as determined by Rogron, being of precisely the same character as that declared in art. 1596.

The jurisprudence of this State has been settled by a series of decisions, determining the character of the nullity of a purchase made by an executor. Since the case of *Harrod* v. *Norris*, 11 Mart. 298, the Supreme Court has had occasion more than once to apply the doctrines therein declared. In the case of *Macarty* v. *Bond's administrator*, 9 La. 351, the court insists that where an executor attempts to purchase, his incapacity is such that the contract of sale cannot exist. The nullity is of so radical a character, that it destroys the contract in its very inception. So in *Scott, Executrix* v. *Goton's Executor*, 14 La. 123, it is expressly declared that the nullity is absolute. The court declares that it is of no consequence to examine, whether or not injury has been occasioned to the parties for whose benefit the property is administered. The prohibition to purchase being absolute, the incapacity is equally so.

In this case, the relation of the plaintiff to *John Ross*, as executor to their father's estate, still exists. The petition itself of the plaintiff shows that this relation still exists.

The opinion of the court was pronounced by

KING, J. The judgment of the District Court is reversed, and the case remanded for a new trial; the appellees paying the costs of this appeal.