OYERTON, Justice.
 

 This is a suit against W. M. Levy, clerk of court of the parish of Caddo and ex officio recorder of mortgages thereof and the surety on his bond, the United States Fidelity &
 
 *198
 
 Guaranty Company of Baltimore, Md., for damages for the wrongful issuance of a mortgage certificate, thereby causing damage to plaintiff.
 

 The mortgage records of Caddo parish dis-. closed two mortgages resting on a certain piece of real property belonging to Emma J. Chavis, granted by her. One mortgage was for $1,250, recorded May 23, 1923, and the second was for $1,831, and was recorded November 5, 1924. There was presented to one of Levy’s deputies, on January 7, 1925, a note for $1,250, dated May 21,1923, supposedly the note secured by the mortgage for $1,250; the note being marked paid. The person who presented the note is unknown. He requested the deputy to cancel the mortgage.
 

 The deputy, after making some investigation to identify the note presented with the mortgage of record, complied with the request, and canceled it. The note presented is conceded to be a. forgery. Therefore, the inscription of the mortgage was canceled by the deputy on a forged note. The genuine note was still out and unpaid. On the same day the person, whoever he was, who presented the forged note, obtained a mortgage certificate from the deputy showing that the second mortgage, mentioned above, that is, the one for $1,831, was the first ’ and only mortgage on the property; the canceled $1,-250 mortgage having been omitted from the certificate.
 

 On the strength of this certificate, Dr. J. D. Woolworth lent some money to the holder of the $1,831 note, and accepted this note as security for the loan. In the fall of 1925 Dr. Woolworth demanded payment of his loan, and the plaintiff herein was induced to furnish the money with which to pay it. The plaintiff did not care to accept the $1,831 note as security, as it was past due, but desired a new mortgage. He asked the deputy clerk for a new mortgage certificate, before parting with his money. The deputy clerk, in obedience to law, furnished the certificate. The certificate furnished was dated October 20, 1925, and showed the $1,831 mortgage as the first and only one on the property, omitting altogether, as canceled, the $1,250 mortgage.
 

 On the faith of this certificate plaintiff furnished the money to retire the loan, made by Dr. Woolworth, and, instead of taking the $1,831 note as security, took a $1,977.48 note, secured by a new mortgage, and caused the $1,831 mortgage to be canceled from the records, thus leaving the new mortgage apparently the first and only one of record, according to the mortgage certificate.
 

 This situation, however, was not to remain undisturbed. The $1,250 mortgage note, upon which the $1,250 mortgage was canceled, was a forgery. The genuine note had fallen into the hands of J. G. Trimble, who subsequently died, and his widow, Mrs. Martha H. Trimble, administered his succession. She sued by way of executory process on the genuine note, causing the property, securing it, to be sold some time about July, 1920. ‘ The property did not bring sufficient to pay the $1,250 mortgage. Efforts were made' by plaintiff to prevent the sale under the circumstances, but in vain. The result was that plaintiff lost his security, for the $1,250 mortgage was still extant and was the first mortgage on the property. Its cancellation did not affect the holder of the genuine
 
 *200
 
 note, for the cancellation was made without his consent or knowledge, and was not binding upon him.
 

 Plaintiff seeks to hold the clerk and his surety'responsible for the fault, and asserted negligence of the former’s deputy in canceling the mortgage on the authority of the forged note. The defense is that the note was identical with the one described in the mortgage and appeared, to be genuine; that the deputy believed it to be the original note, secured by the mortgage; and that the deputy had before him no facts suggesting that the note was forged.
 

 It may be observed, however, that sufficient facts appeared to have had the effect, if heeded, of placing ihe deputy on his guard and to have caused him to investigate the note more closely before acting on it. The note presented as authority for the cancellation was dated May 21, 1923. The mortgage, the cancellation of which was requested, was filed for record on May 23, 1923. The mortgage, as inscribed, bore no date, the purported date being meaningless; nor was there anything in the inscription that indicated the date of the note further than the statement that the note was of even date with the mortgage. Since the mortgage, as inscribed, bore no date, and therefore failed to identify the note with it with certainty, ordinary precaution would dictate that the deputy consult the original mortgage, which was on file in the clerk’s office, to identify the note with it. The inscription indicates, without so saying expressly, that the note was signed “Emma J. Chavis,” and not “E. J. Chavis,” and the inscription shows that the original mortgage was signed “Mrs. E. J. Chavis,” and not “B. J. Chavis,” as was the forged note. These circumstances were ample to place the deputy on his guard and to require the one presenting the note' to furnish proof that it was the note intended to be secured by the mortgage, or to demand that such person obtain a judgment ordering the clerk to cancel the inscription of the mortgage. The failure of the deputy to have done so was negligence, resulting not only in the erroneous cancellation of a mortgage, but also in plaintiff, an innocent third person, losing his security, by leading him to believe that he would have the first mortgage on the property and by leading him to part with his money on the theory that he would have the first mortgage on it, this being done by the issuance of a mortgage certificate, based upon the erroneous cancellation, it being borne in mind that the erroneous cancellation did not affect the rights of the holder of the genuine note.
 

 Section 68 of article 7 of the Constitution of 1921 reads:
 

 “Each clerk of court shall give bond and security for the faithful performance of his duties in such amount as may be fixed by the Legislature.”
 

 This article shows that the clerk of court is responsible to others whom he may injure in performing the duties of his office unfaithfully. One of the duties of clerks is to record the acts that are presented to them for registry and to furnish to those, demanding them, certificates of mortgages. Civil Code, art. 3393. Deputy clerks are granted these powers by law. Section 10, Act No. 204 of 1924. Clerks of court and ex officio recorders are responsible for the faithful per
 
 *202
 
 formance of the ministerial duties of their deputies, transacted in the ordinary course of the business of their offices. 53 C. J., Yerbo “Register of Deeds,” § 44; R. C. D., Verbo “Public Officers,” § 303.
 

 Our conclusion is that the clerk of court and ex officio recorder, one of the defendants herein, is liable for the loss sustained by plaintiff because of his deputy’s fault, and that the surety on the clerk’s official bond is also liable. It would be intolerable if one deprived of his security by the fault of a deputy clerk could not obtain redress from him by whose fault it happened or from his principal.
 

 Defendant, however, urges that plaintiff’s action is one in tort, and is prescribed in one year. While plaintiff’s action involves a tort, it also involves a bond, and the action is upon the bond. An action on a bond does not prescribe for ten years. Therefore the action is not prescribed.
 

 The trial court rendered judgment in favor of plaintiff and against defendants, the clerk of court and his surety, the United States Fidelity & Guaranty Company, of Baltimore, Md., in solido, in the sum of $1,977.48, with 8 per cent, per annum interest thereon fi’om October 25, 1925, and in the further sum of $377.75, costs of court, expended by plaintiff in three suits, seeking to prevent the loss of his mortgage rights, with 5 per cent, yearly interest thereon from October 11, 1930. The trial court also impliedly rejected plaintiff’s demand for 10 per cent, attorney’s fees. These attorney’s fees are stipulated in the mortgage note that was lost, due to the fault of the deputy clerk. While the note itself stipulates the payment of attorney’s fees in the event it is placed in the hands of an attorney for collection or suit, yet this suit is not on the note, but for damages for its loss to plaintiff.. The attorney’s fee clause is not applicable in this, the suit for damages. Therefore, plaintiff’s demand, contained in his answer to the appeal that the judgment be amended by allowing the attorney’s fees rejected below, cannot be sustained.
 

 We find no error in the judgment.
 

 The judgment is therefore affirmed.
 

 ROGERS, J., concurs in the decree.