This is a suit between the Sheriff and Clerk of Court of Caddo Parish, Louisiana, involving the law in regard to mortgage certificates. Since it involved the interpretation of law which would affect all sheriffs and clerks of court in the State, as well as judgment creditors, debtors and the public in general who might become purchasers of realty at public sales, we were requested by counsel for both plaintiff and defendant to hasten a final determination of the question by asking for instructions from the Supreme Court of this State.
Although the questions involved were not complicated, to our minds, we acceded to the request of counsel. The instructions given to us by the high Court set forth the issues and determine them. They are as follows:
"The relator, the Sheriff of Caddo Parish, instituted mandamus proceedings against the Clerk of the First District Court of Caddo Parish as ex-officio recorder of mortgages to compel the respondent to furnish him with an unlimited or unrestricted mortgage certificate covering certain described immovable property which he was scheduled to sell at public sale or auction in a foreclosure proceeding on September 25, 1940.
"The defense is that the law does not place on the respondent the obligation of furnishing the sheriff, or anyone else, with an unlimited or unrestricted mortgage certificate covering property to be adjudicated at public sale, but, on the contrary, he is required to refuse to issue a mortgage certificate unless he is furnished with the full names of the persons having an interest in the property by the applicant who desires to have the recorder of mortgages examine the records of his office in order to report the encumbrances, liens and mortgages appearing against the property in their names; and that the preparation of an unrestricted certificate is a practical impossibility.
"There was judgment in favor of the respondent dismissing the suit and the relator appealed to the Court of Appeal, Second Circuit, which court has certified the case to us for instructions.
"The facts on which the matter is submitted are as follows:
"The relator, as the duly qualified sheriff of the Parish of Caddo, in a foreclosure proceeding, after the immovable property had been seized and advertised for sale on September 25, 1940, made a written demand upon the clerk of court, as ex-officio recorder of mortgages for the Parish of Caddo, for a mortgage certificate covering the property — demanding that the certificate show whether or not there existed any privileges or mortgages thereon, without any reference to the names of the owner or former owners or those interested in the property. The respondent, in a letter dated September 9, 1940, refused to comply with the relator's request but offered to furnish him a certificate on the property restricted to the names of the judgment debtor or owner and such additional names as the relator might furnish to the respondent.
"It was agreed by the parties that an unlimited or unrestricted certificate was one wherein the recorder certified that the only mortgages or encumbrances of record in his office affecting the property described were those set forth in the certificate without any reference to the name of the owner or names of the former owners of the property; and that a certificate restricted to the names of the owner, the former owners, and those interested in the property, was one where the recorder certified that the only mortgages or encumbrances of record in his office appearing in the names specifically designated in the certificate and covering the property described, were those set forth in the certificate.
"The questions submitted for solution are as follows:
"1. Can the clerk of the district court, as ex-officio recorder of mortgages, be required to prepare, execute and deliver to the sheriff a general unrestricted mortgage *Page 852 
certificate to show whether there exists any privileges, mortgages or encumbrances on property offered for sale by the sheriff at public auction conducted by him under execution of judgments when the sheriff requests the clerk to do so, upon furnishing him a description of the judgment debtor or debtors?
"2. If question one be answered in the negative, then is it sufficient and has the recorder discharged his duty and responsibility in such cases by furnishing to the sheriff a mortgage certificate covering the property, but restricted solely to such encumbrances as may have been placed on the property by the judgment debtor or debtors?
"3. If question 1 be answered in the negative, and question 2 in the affirmative, then, is it the duty of the sheriff to furnish the recorder with a list of the names of all owners and former owners of the property involved, in order that the recorder can prepare a mortgage certificate to show whether there exists any privileges or mortgages on the property to be offered for sale at public auction by the sheriff in judicial sales?
"Article 678 of the Code of Practice, which follows various articles outlining the procedure for sheriff's sales under writs of fi. fa., reads as follows: `If they are lands, or other objects susceptible of being mortgages, which are to be sold, the sheriff, after having declared of what they consist, as directed in the preceding article, shall also read, in an audible tone, the certificate which he shall have obtained for this purpose from the office of the register of mortgages in the parish where the sale is made, to show whether there exists any privileges or mortgages on the property offered for sale; provided, that in the parish of Orleans, a certificate from the register of conveyances, showing that the vendor had not alienated in any other way the property about to be sold by him, shall be read by the sheriff, said certificate to give a clear description of said property; and the sheriff neglecting to procure such certificate before passing any act of sale, shall be liable to a fine of not less than $250 * * * and costs of court, one-half for the benefit of the complainant and the other half for the benefit of the State.'
"Article 3393 of the Revised Civil Code provides: `These officers [referring to recorders of mortgages and parish recorders] shall record on their register the acts which are presented to them, in the order of their date, and without leaving any intervals of blank space between them; and they are bound also to deliver to all persons who may demand them, a certificate of the mortgages, privileges or donations, which they may have thus recorded; if there be none, their certificate shall declare that fact.' (Brackets ours.)
"Act 261 of 1855, Section 9 (Rev. Stat. § 3146, Dart's Stat. § 7429), states: `Registers of mortgages shall be bound to refuse their certificates to persons whose Christian or first name shall not be stated, or whose Christian or first name shall be designated by the initial letters alone. * * *.'
"Act 170 of 1867 required the recorder of mortgages to keep records of instruments in the order of filing. Act 76 of 1908 placed on the recorder of mortgages the duty of keeping the indices of encumbrances in alphabetical order. Act 334 of 1936, § 6, authorizes the recorder of mortgages to charge a fee of $1.00 for a mortgage certificate in one name where one piece of property is involved. (See also § 6, Act 228 of 1938, to the same effect.)
"From the foregoing article of the Code of Practice and the Article of the Revised Civil Code and the statutes, it cannot be said that there has been placed upon the clerk of the district court, as ex-officio recorder of mortgages, the legal obligation of furnishing the sheriff, upon his application, with a general and unrestricted mortgage certificate covering described immovable property, without regard to the name of the judgment debtor or the owner thereof. In fact, the above statutes clearly indicate that the full proper name or names of the parties must be furnished the recorder by the applicant for the certificate, in order that he might check the indices of his office to determine whether or not the real property is encumbered and, if so, to what extent. The recorders of mortgages of the various parishes of the state are required by law to keep indices of encumbrances with reference to proper names of the owners or parties interested in the land or realty. These indices, without reference to the proper names of such parties, furnish no guide as to the condition of the property, i.e., whether or not it is affected by liens, privileges, mortgages or other encumbrances. In order for the recorder to issue an unrestricted mortgage *Page 853 
certificate affecting a particular piece of real property, he would be required to determine the present and former legal owners thereof over a long period of time and this would necessitate making a very thorough abstract of the title of the property. To insure accuracy in the description of the property and determine if it conflicts with or is affected by the description in other acts, it would also be necessary to have a survey of the land made. Furthermore, there may be unrecorded deeds and conflicting ownerships growing out of prescription and inheritance where heirs have taken possession of, mortgaged or sold property of a deceased without succession proceedings. To complete his record, the recorder would have to go beyond his office and secure affidavits and do other curative title work. The recorder might well be confronted, even with the assistance of able counsel, with a situation which would make it impossible for him to determine who were the lawful owners of property, as well as what encumbrances exist in their names. Recent cases in this Court, where there were innumerable heirs involved, conclusively show what an impossible situation the recorder would be compelled to face in determining, at his peril, who are the lawful owners of the property, if the law placed upon him the ministerial duty of issuing an unrestricted general mortgage certificate on a certain described piece of real estate. Tyson et al. v. Spearman et al., 190 La. 871, 183 So. 201; Buillard et al. v. Davis et al., 195 La. 684, 197 So. 273.
"Skill and meticulous care would be inadequate to protect him against loss and probable bankruptcy. It does not appear to us that the law contemplated requiring the recorder of mortgages to issue certificates against all liens, mortgages, privileges and other encumbrances whatsoever against a specified piece of realty, regardless of the name or names of the owners or former owners or interested parties for the sum of $1.00, which fee Act 334 of 1936, as amended by Act 228 of 1938, authorizes him to charge. To so hold would be equivalent to saying that the recorder is an insurer or guarantor, under his certificate, against all encumbrances regardless of the names of all owners and former owners.
"In 1 Corpus Juris Secundum, Abstracts of Title, § 3, p. 382, we find: `In some jurisdictions, it has, by statute, been made the duty of certain public officers having the custody or care of records relating to or affecting the title to realty to make searches with respect thereto, when requested so to do, and to furnish a certificate thereof. It has been held that, under such a statute requiring an officer to make searches for all instruments or papers recorded or filed in his office, the search must be exhaustive, when required by any person as to particular land, and that the officer does not fulfill his duty by certifying merely that certain instruments appear of record, without certifying that there are no others affecting such land; but by other authority, it has been held that the intention of a very similar statute was not to make the officer a public abstracter, or require him [to] make, on demand, a complete list of all liens and transfers affecting a tract of land, but only to require him to search for particular instruments to which his attention is specifically directed by the applicant, and, if they are filed or recorded in his office, to furnish the certificate required by the statute.' (See also C.J., Vol. 1, p. 366.)
"We quote the following from the case of Ballinger v. Deacon,44 N.J.L. 559, 563: `The clerk, when he is called upon to make a search, is entitled to have such information — either by the names of parties or by reference to the records of his office — as will enable him, by examining the indices or the record to which he is referred, to ascertain the premises in relation to which he is required to make a search. A party desiring a search cannot carve out a description of lands at his will, and require the services of the clerk to ascertain the condition of the title. He must furnish the clerk with such information, as to the state of the title, as will enable him to ascertain the present status of the title by a simple inspection of the records. Nor is the clerk required, upon a call for a search by such a description, to certify that he can find no deeds on record conveying the premises described, for the premises may be embraced in the general description in some deed on record, and he is under no obligation to employ a surveyor, or to make inquiries or examinations outside of his office, to ascertain facts which do not appear distinctly by his records. * * *.'
"In support of his interpretation of Article 678 of the Code of Practice, relator cites the case of John Smith v. John Moore, 9 Rob. 65, wherein it is stated: *Page 854 
"`Article 678 of the Code of Practice, provides that, if lands, or slaves, or other objects susceptible of being mortgaged, are to be sold by the sheriff, he shall read, in an audible voice — "the certificate which he shall have obtained from the register of mortgages in the parish where the sale is made to show whether there exist any privileges or mortgages on the property offered for sale."
"`This article certainly contemplates, in our opinion, such a certificate as will exhibit to bidders the situation of the property offered for sale, in relation to existing incumbrances — whether created by the actual owner, or previously, so far as the records enable the recorder to ascertain them. But it has been argued, that the recorder cannot possibly ascertain the mortgages, unless the sheriff furnishes him with the name of the owner; that the records do not contain a description of all the property in the parish susceptible of mortgage, so as to enable the recorder to certify in any other way than with reference to the name of the owner. It is true the law does not require impossibilities; but we are by no means prepared to say, that it will, in all cases, be satisfied with a certificate of such mortgages as stand in the name of the defendant in the execution. We readily admit that the general practice has been otherwise, as stated by many of the judges and recorders of mortgages in the country; but such practice cannot alter the law, which was intended as a protection to purchasers at sheriff's sales. Article 3357 of the Civil Code renders this quite clear, by making the registers answerable in damages for omitting to mention in their certificates, one, or several acts existing on their registers, unless the error proceeds from a want of exactness in the description not imputable to them.'
"In the later case of McRae v. Chapman, Sheriff, et al., 10 Rob. 65, the Court cast doubt on the correctness of the above statement and apparently regarded it as obiter dictum for it said, in referring to Smith v. Moore, supra, `* * * we intimated that the recorders of mortgages are bound to state in their certificates all the mortgages existing on the property seized, although not standing in the name of the defendant in execution, if their records enable them to do so.'
"Smith v. Moore, supra, was decided almost a century ago or during the year 1844 and, therefore, before the enactment of Act 261 of 1855 and the other statutes to which we have referred. At that time, it was a simple task to search the records as they were few. However, as the volume of transactions requiring recordation increased from year to year, the legislators took cognizance thereof and passed appropriate legislation requiring the recorders to keep indices in alphabetical order. (See Act 76 of 1908.) The Court itself, in the above opinion, took judicial notice of the fact, even at that early date when this type of service was less involved, that the issuance of an unrestricted certificate was not free from difficulty and was attended with great risk, for it stated that the law did not require the performance of an impossibility and the services would be demandable insofar as the records enabled the recorder to furnish the information sought. In view of the fact that Act 76 of 1908 requires the recorder to keep an alphabetical index and Act 261 of 1855 prohibits him from issuing a certificate unless the full Christian name of the owner or interested party is furnished, and due to the great number of involved transactions which the recorder would have to examine, without regard to indices, to issue a general unlimited or unrestricted mortgage certificate, it is our opinion that the law today does not place the duty and obligation on the clerk of the district court, as ex-officio recorder of mortgages, to furnish such a certificate for in its practical aspect such service would be an impossibility under our present system of filing, recording and indexing mortgages and encumbrances affecting real property.
"We have also been referred to the following cases: McRae v. Chapman, Sheriff, et al., supra; Succession of Falconer-Charles Morgan, 1843, 4 Rob. 5; and Macarty v. Bond's Adm'r, 1836,9 La. 351, 354.
"Our observations concerning the Smith v. Moore case, supra, are equally applicable to these cases.
"With reference to the case of David R. Fox v. Thibault, 33 La.Ann. 32, decided in 1881, the recorder assumed the responsibility of an unrestricted mortgage certificate and a party acted upon it to his injury in believing that there was no prior mortgage existing against the particular piece of property, and thus the recorder contracted a liability beyond his statutory duty. *Page 855 
"In 1 C.J.S., Abtracts of Title, § 12, p. 398, it is stated: `* * * an officer, although not required by statute to make searches or to certify to the state of the records, may contract so to do, and where he does so, he is liable for a failure properly to carry out and perform his agreement. * * *'
"In the case of Fisher v. Levy, Clerk, et al., 180 La. 195,156 So. 220, 94 A.L.R. 1297, it appears that an unrestricted mortgage certificate was involved, but the court found that failure to report the mortgage thereon was through the negligence of the deputy clerk who, although amply placed on guard, cancelled the mortgage on a forged note.
"Our answer to the first question propounded is in the negative.
"To the second question submitted, our answer is in the affirmative.
"Our answer to the third question is that it is the duty and responsibility of the sheriff to furnish the recorder of mortgages with a list of names of only the owners and former owners of the described property involved as shown by the records and written information in his possession and such additional names as the interested parties or their attorneys may furnish to him in writing in order that the mortgage certificate of the recorder of mortgages shall be as complete and comprehensive as possible covering all privileges, mortgages or encumbrances against the described property which is to be sold at public auction, and that the sheriff performs his duty and discharges his responsibility in accordance with Article 678 of the Code of Practice, upon reading such a certificate preceding the adjudication of the property."
Since we requested and received instructions, we feel forced to follow them, although they do not express the views of this court.
Under the instructions of the higher Court, we are wondering what effect they will have upon the notary, as is now provided by Article 3364 of the Revised Civil Code, as follows: "Every notary who shall pass an act of sale, mortgage or donation of an immovable, shall be bound to obtain from the office of mortgages of the place where the immovable is situated, a certificate declaring the privileges or mortgages which may be inscribed on the object of the contract, and to mention them in his act, under penalty of damages toward the party who may suffer by his neglect in that respect."
It is to be noted that this Article provides for a certificate declaring the privileges and mortgages which may be inscribed on the object of the contract and not privileges and mortgages against some named owner.
Articles 3393 and 3394 of the Revised Civil Code cover the requirements of the register of mortgages and the liability of the recorder for injury by failure to include in his certificate all mortgages resting on the property. The only exception made in Article 3394 is when there is an error in the description.
In 1930, this court had before it the case of Hathorn v. Hundley et al., 13 La.App. 323, 125 So. 774, 775, involving an erroneous mortgage certificate. We said in that opinion: "When a clerk of court furnishes a certificate of mortgages, it is his duty to show every mortgage of whatsoever kind resting against the property, and, if his failure to do so causes damage to one relying on said certificate, the clerk of court is liable for all loss occasioned thereby."
The Supreme Court of this State refused a writ in that case with a comment that the judgment was correct.
We are unable to follow the reasoning of the Supreme Court in the instructions given to us. Under those instructions neither the sheriff nor clerk is held to have any responsibility or liability regarding mortgage certificates, required by law to be secured and read at public sales. However, they are adopted by us as the opinion of this court, since we have been so instructed.
For at least more than half a century the interpretation of the law regarding the questions involved here have been interpreted by the bar, clerks of court and sheriffs to be different from the interpretation now placed upon them by the Supreme Court of this State and it has been the uninterrupted custom of the clerks of court to furnish the necessary mortgage certificates covering the property. It has not been an arduous task and the losses occasioned by the clerks have been few and in almost, if not all, instances where there were damages awarded against a clerk for an erroneous certificate, it was due to a flagrant mistake or defective records caused by neglect in his office.
If the present rule as laid down in the instructions given to us by the Supreme Court governs in the future, then public sales under *Page 856 
executory process and fi. fa., will be valueless, for it is certain that no purchaser at public sale will be willing to bid anything near the value of the property offered for sale. The result will be that the judgment debtor's property will be sacrificed for a song and the judgment creditors will be unable to secure from such sales the amounts owing to them, for it cannot be supposed that a prospective buyer will spend his money in having a title examined when he does not and cannot know that he will be a successful bidder.
Furthermore, it is our understanding of the law that when property is seized and advertised for sale under a second mortgage, no adjudication can be made unless the amount bid is sufficient to cover the sum due on the first mortgage. Under our instructions from the Supreme Court, the sheriff or the bidder would never know whether the bid or adjudication were legal.
The law, including Article 678 of the Code of Practice, appears plain and clear to us, however, we have received our instructions and therefore the judgment of the lower court is amended to comply with the instructions given to us and quoted above; all costs to be divided equally between the parties litigant.
 *Page 62