311 So.2d 542 (1975)
CHESTER HOOVER CONSTRUCTION COMPANY et al., Plaintiffs and Appellants,
v.
Iown THORNBURG, Deputy Clerk, and Clyde R. Webber, Jr., Clerk of Court, Concordia Parish, Louisiana, Defendants and Appellees.
No. 4946.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1975.
*543 Voelker, Ragland & Brackin by James C. Crigler, Jr., Lake Providence, for plaintiffs-appellants.
Harry S. H. Verlander, Jr., of Faris, Ellis, Cutrone, Gilmore & Lautenschlaeger, New Orleans, and Falkenheiner, Calhoun & Murray by George C. Murray, Jr., Vidalia, for defendants-appellees.
Before FRUGE, CULPEPPER and DOMENGEAUX, JJ.
CULPEPPER, Judge.
Plaintiffs filed this suit against the Clerk of Court for Concordia Parish and one of his deputies for damages in the sum of $2,480 resulting from the issuance by the Clerk of an erroneous chattel mortgage certificate. Plaintiffs owned a large tractor used in their construction work. They contend the mortgage certificate, which erroneously showed a chattel mortgage that did not affect the tractor, caused plaintiffs to lose a sale of the tractor for $13,750. They later secured a corrected certificate from the Clerk and sold the tractor to the same purchaser for $12,000. Plaintiffs seek the difference of $1750, plus certain expenses in securing the second sale.
The district judge held that although the Clerk was negligent in showing on the certificate *544 the chattel mortgage which did not affect the tractor, the erroneous certificate was not the cause of the loss of the first sale. From a judgment rejecting their demands, plaintiffs appeal.
The facts are that the Chester Hoover Construction Company is a partnership composed of David Hoover and his son, Chester Hoover. David actually managed the business. They used tractors, bulldozers, drag lines and other such equipment in construction work. The Hoovers had purchased the tractor in question, along with other equipment, from Scott Truck & Tractor, Inc. some time before February of 1973. They still owed part of the purchase price, which was secured by three chattel mortgages recorded in the Office of the Clerk of Court for the Parish of Concordia.
In February of 1973, Hoover requested Scott Truck & Tractor, Inc. to refinance the chattel mortgages. In order to ascertain whether there were any other chattel mortgages or liens affecting the equipment, Mr. Sam Adams of Scott Truck & Tractor, Inc. ordered from the Clerk of Court of Concordia Parish the chattel mortgage certificate at issue. When he received the certificate, dated February 6, 1973, Mr. Adams noticed that in addition to the chattel mortgages in favor of Scott Truck & Tractor, Inc., the certificate showed a chattel mortgage dated May 19, 1972 from Hoover Construction Company in favor of Delta Truck & Tractor, Inc. of Ferriday. Mr. Adams immediately contacted Mr. David Hoover who stated that he had not granted a chattel mortgage on the equipment in favor of Delta Truck & Tractor, Inc., and that the certificate must be in error.
Chester Hoover testified that on learning of the questionable certificate, he sent his wife to the Office of the Clerk of Court to check on the matter. His wife testified that she went to the Clerk's office and, with the help of an employee of the Clerk, she checked the records and found there was no chattel mortgage to Delta Truck & Tractor, Inc. affecting the equipment, and the mortgage certificate was in error in showing such a mortgage. She reported this to Mr. Hoover and to Mr. Sam Adams, but she did not request a corrected mortgage certificate.
Thereafter the Hoovers became delinquent in their payments on the chattel mortgage to Scott Truck & Tractor, Inc. They decided to sell the tractor. Mr. David Hoover testified he agreed to sell the tractor to Southern Equipment & Tractor Company of Monroe for the sum of $13,750.
On about August 3, 1973, Mr. A. L. Hammonds of Southern Equipment & Tractor Company, met with Sam Adams, who was acting as agent for Hoover in the sale, at Adams' office in Monroe for the alleged purpose of completing the sale. Mr. Hammonds testified he handed to Mr. Adams a check for the purchase price of $13,750 and was ready to complete the purchase on assurance by Adams that any mortgage held by Scott Truck & Tractor would be canceled as to the tractor. However, at that time Mr. Adams advised Mr. Hammonds that he had a chattel mortgage certificate which showed a mortgage in favor of Delta Truck & Tractor, Inc. Hammonds testified that Adams then telephoned Delta Truck & Tractor, Inc. and they said they did not have a chattel mortgage on the tractor. Adams also telephoned the Office of the Clerk of Court of Concordia Parish and someone in that office advised that they could not find a record of the Delta mortgage covering the tractor. Nevertheless, Hammonds testified he decided he could not take a chance that Delta's mortgage affected the tractor. He says he refused to complete the sale, took his check and left.
Sam Adams testified substantially the same as Mr. Hammonds regarding the events of August 3 when the sale to Southern Equipment fell through.
*545 When the Hoovers learned that the sale to Southern Equipment had not been completed, they went to the Office of the Clerk of Court and secured a corrected chattel mortgage certificate dated August 8, 1973, which omitted the mortgage to Delta and showed only the chattel mortgages in favor of Scott Truck & Tractor. A few days later they again tried to arrange a sale to Southern Equipment & Tractor Company, but were advised by them that Southern had purchased a different tractor.
The Hoovers testified they then tried to find another purchaser for the tractor for the sum of $13,750 but were unsuccessful. On September 27, 1973, Hoover finally sold the tractor to Southern Equipment & Tractor Company (the same as that which previously refused to purchase) for the sum of $12,000. Plaintiffs contend they are entitled to the difference of $1750, plus certain expenses incurred by them in securing the final sale.
The first issue is whether the defendant Clerk of Court is liable under the following Articles of our Civil Code:
"Art. 3393. These officers shall record on their register the acts which are presented to them, in order of their date, and without leaving any intervals or blank space between them; and they are bound also to deliver to all persons who may demand them, a certificate of the mortgages, privileges or donations, which they may have thus recorded; if there be none, their certificate shall declare that fact."
"Art. 3394. The register of mortgages and the parish recorders performing the same duty, are answerable for injury resulting:
"1. From omitting to record such acts as are directed to be recorded in their office.
"2. From omitting to mention in their certificates one or several acts existing on their registers, unless in this latter case the error proceeds from a want of exactness in the description, which can not be imputed to them."
The defendant Clerk argues that under the clear language of Article 3394, quoted above, he is liable only "From omitting to mention" in his certificate a mortgage covering the chattel in question. In the present case, the Clerk did not omit to list a mortgage. Instead, he placed on the certificate a mortgage which did not cover the tractor in question.
The plaintiffs argue that by implication Article 3394 should be extended to cover an erroneous addition to a certificate although the words of the Article mention only omissions.
There are several cases holding clerks liable for "omissions" from mortgage certificates. But there is no reported case from Louisiana holding a clerk liable under Civil Code Article 3394 for mentioning in a certificate a mortgage which does not affect the property.
LSA-C.C. Article 13 provides the cardinal rule that "When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit." In the present case, the words of Article 3394 are clear and free from ambiguity. The Clerk is liable only for "omissions" from his certificates. We conclude the statute must be construed as it is written by the legislature. Hence, the defendant Clerk in the present case is not liable under Article 3394.
The next issue is whether the Clerk is liable under Civil Code Article 2315 for the damage allegedly suffered by the plaintiffs due to the Clerk's fault. Jurisprudence has established the rule that clerks of courts are responsible for the faithful performance of their ministerial duties, transacted in the ordinary course of the business of their offices, Fisher v. Levy, 180 La. 195, 156 So. 220 (1934). It is our view that under this article a clerk *546 of court could be liable to a person who orders a mortgage certificate for any injury to that person resulting from showing on the certificate a mortgage which does not affect the property.
The next issue is whether the clerk should be relieved of liability since the damage which allegedly occurred was not suffered by the person who ordered the chattel mortgage certificate. We find no Louisiana case on this question. There is a Federal Court case, Lawyers Title Insurance, Inc. v. Pitre, 245 F.2d 334 (5th Cir. 1957), which held that liability under Civil Code Articles 3393-3394 extends to third persons who did not order the certificate, since the phrase in Article 3393 "persons who may demand" a certificate, necessarily includes third parties. However, that case is not pertinent here because we find there is no liability under Articles 3393-3394.
We recognize that the liability of a contracting party to a third person with whom he has made no contract has been extended to the manufacturers and sellers of defective products, the suppliers of certain types of services and many other contractors. See the general discussion in Prosser On TortsThird Edition, Chapter 19, Sections 96-99. Nevertheless, the liability of contracting parties does not extend to third parties in every situation. A persuasive argument can be made in the present situation that a clerk of court should be liable only to the party who orders the mortgage certificate.
However, we prefer to pretermit the question of whether the Clerk may be liable to third parties for errors in his mortgage certificates. Even assuming that the Clerk may be liable to third parties, we find no manifest error in the factual conclusion of the trial judge that the erroneous certificate in this case was not a cause in fact that the first sale of the tractor was not completed. In his reasons dictated into the record at the end of the trial, the district judge stated:
". . . however, I don't feel that this loss was occasioned by error in the mortgage certificate. I just can't conceive, I don't like to say anyone's issuing a falsehood, but II can't take the testimony of either Mr. Adams or Mr. Hammons as beingI don't think they were candid because there was just toothis mortgage certificate was just too longtwo sophisticated dealers like that would not under any circumstances, rely upon a mortgage certificate seven months old in any dealings because it would simply be too old, out of date, it'd be too much possibilitytoo many things could have happened in between time."
Essentially, the trial judge simply did not believe the testimony of Mr. Adams or Mr. Hammonds. There are several circumstances which indeed cast doubt on their testimony. The evidence is clear that both Mr. Adams and the Hoovers had been fully aware for about six months before the sale that the first chattel mortgage certificate showed a mortgage against the tractor which did not affect it. Even though they did check with the Clerk of Court at least twice, and apparently satisfied themselves that the mortgage in question did not cover the tractor, they never did order a corrected certificate before the sale in question.
Furthermore, when Mr. Hammonds met with Mr. Adams on August 3 to close the sale, Hammonds says he had already actually handed the check to Adams in payment of the tractor, and then Mr. Adams decided to show him the chattel mortgage certificate in question. Hammonds testified he then decided not to buy the tractor. However, the evidence does not show that there was any deadline or date set for the actual consummation of the sale and there is no evidence that time was of a essence. Mr. Hoover was not present and could not sign the bill of sale for several days. The tractor was not to be immediately delivered. After Mr. Adams, in the presence of Hammonds, made telephone calls both to the Clerk of Court and to *547 Delta Truck & Tractor, Inc. and determined that the chattel mortgage in favor of Delta was erroneously shown on the certificate, there is simply no reason why Mr. Hammonds or Mr. Adams could not have immediately obtained a corrected chattel mortgage certificate from the Clerk of Court and completed the sale. Added to all of this, is the suspicious circumstance that about two months later, the tractor was actually sold by plaintiff to Mr. Hammonds' employer for the sum of $12,000, which was $1750 less than the alleged price of the first sale agreed upon.
Under all of the circumstances, we find there is a reasonable evidentiary basis for the conclusion of the trial judge that this erroneous certificate was not in fact the cause that the sale was not completed.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.